Next case is number 06-1026, Glaxo Group against Cali Laboratories. Mr. Porcelli. Good morning, your honors. May it please the court, defendant appellant is here to obtain a ruling by this court that will enable it to go onto the market with its generic form of Ondansetron before this patent expires, which is effectively in December of this year. The patent expires in June, but by pediatric exclusivity, it is extended until December. So that's what this appeal is about. We have two issues, the anticipation issue and the claim construction issue. The first issue, anticipation, we ask for a complete reversal of the ruling of the district court on the ground that the district court erred in concluding that the Coates patent did not anticipate the claims that are at issue. We believe that the Coates patent anticipates because it teaches providing Ondansetron, albeit with an anti-nauseant, to people in need of an anti-nauseant, who are nauseous. If in the 578 patent, if we deleted those three lines referring to the administration of the Ondansetron together with these anti-nauseal drugs, would you then lose on this issue? Yes, your honor. We're not making the argument that Teva made that there's this link between migraine and nausea, and therefore the general teaching anticipates. We are relying on the specific teaching in those three lines, which we believe. Okay. So, but the problem with the teaching in the three lines is that there's no suggestion of using the Ondansetron for anti-nauseal therapy. It just says you can give it with these anti-nauseal drugs and you won't have a problem, is basically what it says. Well, I agree with your honor, it's not teaching it as an anti-emetic. Dr. Coates didn't recognize that it was an anti-emetic, but he did tell people skilled in the art that for that subset of people who are nauseous, who also have the maladies of his patent, give them Ondansetron in combination with an anti-nauseant. Those people who carry that out are infringing afterwards and anticipating before. That's a teaching that anticipates, because all the claim requires is that you identify that group who are nauseous, in other words, the people who are in need thereof, and you provide them Ondansetron in an effective amount. And there's no argument from Glaxo that that patent teaches an effective amount. They don't deny that the amounts are the same. And there's nothing in the claim that requires any knowledge that it's the Ondansetron that's curing the nausea. The claim simply requires you provide it to people who need an anti-nauseant, and therefore it's a method for treating them by providing it. So therefore there's anticipation, even without that recognition. The claim is to a method of treating nausea, and certainly that's not in the reference that this is a method of treating nausea, it's a method of treating something else. But when you carry out COM 3, Your Honor, you are treating nausea and the something else. You're providing a combination of Ondansetron and another anti-nauseant, and you're treating both maladies at the same time. It's a combination. Another anti-nauseant. That's what, if you would help to explain why the prior art teaching of another anti-nauseant should be deemed to anticipate this anti-nauseant. Because it's in combination with this one. And even though Dr. Coates may not have recognized that it was acting as an anti-nauseant, it doesn't matter because the teaching of the patent is you are providing it along with the other anti-nauseant to people. So the fact that it's the Ondansetron that's actually doing the effect on people is part of the prior art. And you are repeatedly treating those people. Even though you might not know, you might think it's the anti-nauseant that's doing it, it's the Ondansetron. And therefore, you're practicing the claim, you're anticipating the claim. They could have written a claim that would have done what Your Honor is, I think, getting at, which is really link some kind of intent here. That you intend to give people the Ondansetron to cure the nausea. Or they could have avoided the whole problem by excluding the other anti-nauseant. They could have said consisting of, instead of comprising, or they could have said without another anti-nauseant. If they had written the claim that way, I wouldn't be here. But they wrote a claim that covers those three lines of the Coates patent. And that's it. I'm sorry. I'm sorry. Go ahead. Do you agree that our law about inherency in this area is sort of confusing? Well, I think there was a time when there was a debate on whether you needed a recognition requirement. And I think the latest opinions of the court, including Perricone and even Shearing, are now saying no, you don't need the recognition. And therefore, you can have inherent anticipation by a teaching, as in Coates, even though Dr. Coates didn't recognize it. Well, even if you don't need a recognition at the time, the question is what is it, you know, what class of people are receiving it. I take it that the line that we're trying to draw here is between somebody who identifies a benefit which is already being provided, which shouldn't be patentable, and somebody who's identifying a new benefit that would allow someone to change behavior and provide a benefit. I mean, that's the line, right? Right. But you have to be able to claim what's new and not claim the old ground. And what we're saying is that that's not what they did here with their claim. Their claim covers the old ground, which is the teaching to a person skilled in yarn and Coates to treat people with nausea with Ondansetron and to an anti-nauseant, if they also have the maladies of that patent. So you're saying that the law of anticipation should be that even though this property of Ondansetron was not recognized in the prior art, nonetheless, there's anticipation because they recognize there might be a problem of nausea? No, because they are being told to give Ondansetron together with something else to nauseous people. And that's the teaching of those three lines in the patent. Give it to nauseous people. To give along with the anti-nauseant. Yes, along with an anti-nauseant. Right. I'm having trouble taking the leap from that to anticipation, which has to be the same invention. Whatever technicalities flow in on particular facts to anticipate, it has to be the same invention. And it has to be recognizable. It has to fall within the claim, and we believe that that act of teaching and of doing what Coates says falls within the claims. Then you have to say the claim is broader than the invention now patented. I'm saying that they could have claimed it more narrowly to avoid the problem, but they didn't. They didn't put that, either exclude the other anti-nauseant, which they could have done, or put in some kind of actual recognition into the claim that you're giving the Ondansetron, not the other thing, to relieve the nausea. And the claim doesn't do that. The claim just says, a method by administering Ondansetron in an effective amount. And they are administering, following Coates, you are administering Ondansetron in an effective amount. With, if you want, an anti-nauseant. But I'm having trouble finding where it says in the prior art that Ondansetron is usable as an anti-nauseant. I'm not saying there is. I'm arguing inherency from the teaching that for the subset of people in Coates who have nausea and the other malady, that teaching is to give them Ondansetron with the other anti-nauseant. And the fact that you give them the other anti-nauseant doesn't take you out of the claims of the GlaxoPats. But how do you know that the anti-nauseant effect is coming not from your other anti-nauseant, but from Ondansetron? Well, the Ondansetron is known to be an effective anti-nauseant, so giving it in those amounts to somebody with nausea, you would assume that you are, and the claim doesn't say you have to cure them. It just says you have to treat them. That's this invention. Is it not? The discovery and development of that use? Well, the claim is... When you say it's known to be, you're talking about the patent in suit, right? The claim is not the discovery of the use. The claim is the recognition of what was already happening in Coates, what was already being taught in Coates. Coates was already telling you to give it to nauseous people, so it's not a new use, but it's a recognition of what was already happening in Coates, and albeit you can expand it more broadly than Coates, but they didn't claim it that way. They claimed it in a way that is anticipated by Coates. Coates doesn't have to anticipate the whole claim. It just has to be within the claim to knock it out, and that's all we're saying. Suppose... Let me be hypothetical. Suppose there had been a teaching to administer Ondansetron to everybody who's receiving chemotherapy because it would help relieve the pain and inflammation, let's say, from that process. Would you be saying that there was an inherent anticipation under those circumstances? Well, that's closer to Teva's argument that when you say give it to people who have migraine, most people who have migraine have nausea, and we're not making that argument. We're saying... Because I think the problem with making that argument is you get in situations where maybe somebody doesn't have nausea who has chemo. But we're saying that that problem is taken away because the column in Coates is already saying you start with the people who are nauseous, and Coates tells you start with the people who are nauseous and also have these other maladies and give them Ondansetron with the other anti-nauseant. And that's the difference. Well, but it's really... It's saying more, isn't it, that it's not a problem to give this to people who are receiving these anti-nauseal drugs. It's not really teaching to give it with the anti-nauseal drugs. Suppose it had said that explicitly. Suppose it said there's no problem in administering Ondansetron to people together with anti-nauseal drugs. Would that be an anticipation? I think the way it's said there is, and it's part of the dosage and administration section of the patent, is to tell you to do it in combination, you know, if you want to... I'm going to take my hypothetical. Okay. Suppose all it said was it's common for people in cancer therapy to experience nausea. You frequently give them anti-nauseal drugs such as X and Y, and there's no problem in administering Ondansetron together with those anti-nauseal drugs. I think that's a little harder of a case than ours. How does it come out? I think our case is clearly an anticipation because it's telling people... Yeah, how does my hypothetical come out? I think probably not, unless there's an actual, you know, well, to the extent that there's an implicit suggestion to do it for nauseous people, I would say it comes out the same way. So I guess... It's hard, isn't it? But I'm just saying that I think ours is clearer and a much more direct statement. I mean, the plaintiff has argued, well, that's just a statement of drug interaction. But it's not, because use the word combination, and it's in the section on dosages. It's talking about giving people two things together. It's not talking about, oh, well, if you happen to have already taken an anti-nauseant and you take this, they won't interact. It's a statement about dosage. And I think that's why it's a teaching that inherently anticipates. If I may... I'm afraid you're into your rebuttal time. You can use it now if you like or save it. I'll just say a word on claim construction. I think that the issue on claim construction is real clear that the patent, the prosecution history all do not put a mechanism, a pathway into the claim. I think that for the court to have read it in was wrong, and I think we're entitled to a remand on the summary judgment motion. It's based on that improper reading in. Thank you. Okay. Thank you, Mr. Porcelli. Mr. Mangelino. Good morning, Your Honor. I'm pleased to court. Your Honor, first off... Let me ask you a hypothetical, okay? Okay. Suppose there were a preexistent patent, prior art patent, on Andansitron and an anti-nauseant. And it said, this combination should be administered to people suffering from pain and nausea. Would that be anticipatory? I believe if it said to give it to somebody who's suffering from pain and nausea, I believe it would be anticipatory. If it disclosed the intent to treat the underlying condition that you are now trying to claim, that would be anticipatory. Okay. But, well, just so you're not misled by my hypothetical, this patent says you give them the Andansitron for the pain, and you give them this other anti-nausea for the nausea. But this combination should be administered to people suffering from both pain and nausea. Then I would say it would not be an anticipatory reference, Your Honor. I think that's what we have here. I think pursuant to the most recent cases... You can see that's what we have here? I believe that we have a situation, well, let me back up. I think they are trying to make the statement about compatibility your statement, and I have problems with that for two reasons. First of all, they're trying to use that statement, pull out this statement in the patent as a separate teaching. The fact of the matter is that is a factual matter incorrect. The patent, in the very beginning where it talks about the prior art treatment for migraine headaches, says that you treat migraine headache using a painkiller. In many instances, you could give an antiemetic for nausea and vomiting. Then it goes on to say that this particular drug is compatible with other drugs. That does not teach to give this drug for the purpose of treating nausea and vomiting. So I have a problem with their factual basis for saying this is a teaching. Going beyond that, if they simply play the numbers game and saying, well, you are by admission giving it to people that have nausea and vomiting. They lose on that as a matter of law, Your Honor, because they're using the improper test. The question is not whether, if ondansetron is given to someone who is suffering from nausea and vomiting, that inherently that drug will treat nausea and vomiting. That's true, but that's not the question that this court should be asking. As said in Perricone, the real question is- Well, are you saying that there's no anticipation unless it was appreciated or taught to use this for treating nausea? I think pursuant to the Rexall case and Perricone, there has to be an intention to treat that disease. Okay, so if we conclude that that's not a legal requirement, you lose the case? I think if you conclude that Perricone is wrong and Rexall case- No, no, no, that's not what I asked. What I'm asking you is if we conclude that it's not necessary that the prior art specifically teach the use of ondansetron to teach nausea, you lose your case? Again, Your Honor, there are two tests here, and I don't mean to not answer your question. Well, you're not answering it. Well, I'm not answering it, Your Honor, because the way it's phrased, I think it's impossible to answer. If you have a situation where the natural flow or the necessary consequence of giving a particular drug will treat that particular underlying condition, that is one situation, but that's not the situation- So you're going to have an anticipation, so that's what happened. Then you may have anticipation, but here we don't have that situation. Here we have a situation where the 578 teaches to give this drug for a number of conditions. None of those conditions are nausea and vomiting, and none of the related conditions, such as schizophrenia, migraine, have nausea and vomiting associated as a necessary symptom. So in that particular case, where there's no recognition, we're back all the way to continental can, where there's just a possibility that if someone is suffering from nausea and vomiting, yes, it would inherently be cured. But again, that's not the test, according to the most recent cases, Perricone, where they indicate that you have to ask whether the prior art intended to treat this disease, this underlying condition. That's the question, and the 578 simply does not teach that. I'm having trouble with that, because I don't read the cases as requiring an intent in the prior art to treat the particular condition. I would have thought that was the whole point of inherency, that you can sometimes have anticipation, even if the prior art doesn't teach the use of this drug for this condition. I think in a method of use, okay, the prior teaching has to show an intent or recognition or appreciation of treating the underlying disease. And in fact, counsel made the statement that we couldn't- So I come back again, that if we reject that and say that we don't have to have this teaching or appreciation that it would do this in the prior art, how does this case come out? If we put in the fact that it would be a necessary consequence of giving this drug at tort for the prior art, I would agree with Your Honor. But again, we don't have that situation here, because when you give a Nancitron pursuant to the teaching of the 578 patent, the necessary consequence flowing as found by Judge Sleet in his decision and by Judge Linares in this decision, that is not the consequence that you get. It's simply a possibility, and that is not sufficient under anticipation. Going beyond that, all right, where you have only this possibility, then I think you have to have this idea of intent. So I think the answer to your question is depends on the circumstances. Okay, I think you've clarified it. Now, one of the things Your Honor, counsel mentioned, that we could have written a claim to make this intent more prominent. The fact of the matter is, the Janssen case, one of the first cases in this area, indicated that the language in need thereof does exactly that. The Janssen case indicated that in need thereof is a clear limitation. And what that clear limitation is, is a recognition and an appreciation of treating the underlying condition. And again, I believe that was also the holding of peril. So I think, Your Honor, you have to take the teaching as a whole. The teaching as a whole does not indicate any intent to do this or any appreciation. And also that we're simply playing the numbers game, which counsel said he's not, Teva did that, all right? This is not, the treatment of nausea and vomiting following the teaching of the 578 is not a natural consequence. So I believe, Your Honor, that based on the law that we've cited, that this case should be affirmed. At least- Let me, if I could ask you a question on the claim construction issue. I guess Mr. Porcelli touched on it at the end of his argument time. But just, I want to make sure I understand your contention on claim construction. Does your claim construction argument basically come down to this? It is an inherent feature of ondansetron that it only binds to the 5-HT3 receptor. Hence, by claiming administration of ondansetron to treat nausea and vomiting, you necessarily are only claiming the treatment of nausea, regardless of the cause, that chemically results from an agonist binding to the 5-HT3 receptor. I believe, Your Honor, that's the way one would understand the claim language, because- That's your claim construction position. Yes, the claim construction, and the judge was not reading or reading out any limitation. He's simply reading the language of the claim in the manner one's skilled in the art. Is that because of the use of the word effective? No, because of the word ondansetron. Ondansetron is a chemical compound. It is the subject of the patent. So the use of the word effective doesn't help you? No, no, I believe that the word we're relying on, and I think the judge relied upon it, that the word ondansetron is described in the specification as being a 5-HT3 antagonist. And the record, it's undisputed, their own experts admitted that at the time of this patent, if I knew something was being described as a selective 5-HT3 antagonist, I would have no belief that it would work on nausea and vomiting that was being caused by some other pathway, such as D2. So what this is all about is- You surely would be in here, if it did work on another pathway, you'd be saying, boy, this claim really isn't limited to 5-HT, it covers other pathways too, right? Right, and again, your honor, the only problem I have is this idea of limitation. We can talk about whether it's a limitation. I say it's simply the way one skilled in the art reads that claim. And understand, and the judge indicated this in opinion, the basis for this argument is to kind of set us up to say it covers all nausea and vomiting, which is caused by any pathway, which they know is not true. We never said that. So then they can go back and argue that our claim is overly broad, it's not enabled. But the key, Mr. Mendolino, is that ondansetron to one skilled in the art, when you use the term ondansetron, you're talking about something that operates at the 5-HT3 receptor. Absolutely, your honor. That's the point. And I will say that that is not even extrinsic evidence, that's intrinsic evidence because the specification clearly says that. Okay, but suppose it was discovered that it worked on another pathway that wasn't  That's a tough question, Judge, I'm not really sure. I think part of the problem here is, I think that would be so against the understanding of the technology that it's a hypothetical that I can't conceive of happening. The problem is, and I don't mean, again, not to answer your question, but some of the technology comes in. One of the problems with migraine, like any other condition, and the pathways. When we say ondansetron is selective, because we know, through testing, that it only seems to target this 5-HT receptor. The problem with many causes- I don't think that's the meaning of the word selective. I don't think it means only. I've looked it up. It means it works with that, but it doesn't mean only works with that. It targets that, it's target. And ondansetron happens to be a very, very selective receptor. The problem with some of these causes, if you feel nauseous, let's say from motion sickness, all right? Many times that cause is caused by a number of different pathways, and many times you're not aware of it. And that's why we believe that the judge was totally proper in not limiting this to any 5-HT3, because for any particular cause, because you're never quite sure, okay, what is causing this stuff. Now for migraine, we know that that nausea and vomiting has some 5-HT3. But we also know that it's also caused by some D2 antagonism, because prior to that, that's the way it was treated, with D2 antagonists. So there's combinations here which are not always clear. But the whole point of this claim interpretation issue is whether or not we should be claiming, as they say, all pathways, including something other than 5-HT3. And we say, we are not claiming that. It is not a limitation in the claim. It doesn't have to be a limitation in the claim, because one skilled in the art would understand it to be a 5-HT selective antagonist. Unless you have further questions, Your Honor? No questions? No questions? Thank you. Mr. Porcella. Thank you, Your Honor. A couple of quick points. On the claim construction issue, I think it's clear from the patent itself and the prosecution history that there's no limitation in the claim as to pathway. And we've just heard an attempt to read it in, but then again, if it turns out later there's another pathway, you can be sure Glaxo is going to read it out. And I think that's what's improper here. They asked for a claim broader than the pathway. They wrote it that way. The spec doesn't support- But Mr. Porcella, Mr. Mandolino says, and correct me if I'm wrong, as I understood him to say that when you use the word ondansetron, one skilled in the art would know that you are talking about an antagonist that works at the 5-HT3 receptor on the cell, right? But not necessarily only. In fact, their own statements had said, well, we're not positive how it works. It might work other ways and we don't want to give up on other ways. I mean, that was some of the argumentation that was made below. So I don't think that just trying to read the whole mechanism by the name of the chemical compound works for them. And I think if this court were to go down that road, pretty soon, you know, you're going to just, that's the end of claiming- It's your view that the spec and the prosecution history, which is somewhat limited on this point, I acknowledge, doesn't support Mr. Mandolino's position. That's correct. But you're not saying, because I don't think I've seen claims where the scientific background, the explanation, the details of how any pharmaceutical product, for instance, works, is included in the claim. Now, that's for the specification. That's for the description. The claim claims the product or the use or whatever it is so that it can be understood. I agree. And that's why Judge Linares erred when he wrote it in there as part of his claim construction. And we want it taken out in a remand. He construed the claim. Construing a claim doesn't insert into the claim all of the often lengthy paragraphs of construction that we see. Construction is understanding. Well, I mean, I'm just looking at his construction, and I believe he read it right in. May I say one thing on the Janssen case, Your Honor? One sentence. Okay. I think Mr. Mandolino misreads Janssen because the holding in Janssen was simply deciding this issue. Whether a human must know that he is in need of treatment or prevention of the particular anemia. And that was all that the holding of Janssen was. In this case, the human knows he's in need of an adenozyant. Of course, Coates teaches that. So Janssen is not of any help to Glaxo. Thank you, Your Honor. Thank you, Mr. Porcelli. And Mr. Mandolino, the case was taken under submission. Thank you.